HENDERSON, Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant: AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant and Respondent.

*No. 353. Argued June 4, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 423.)

For the appellant there was a brief by *Boardman, Suhr, Curry & Field* of Madison, and oral argument by *Brad A. Liddle* of Madison.

For the respondents there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, attorneys for the defendant-respondent, and *Frank M. Coyne* of Madison and *Seymour J. Kurtz* of Chicago, Illinois, attorneys for the plaintiff-respondent, and oral argument by *Steven J. Caulum* of Madison, for the defendant-respondent and *Mr. Coyne* for the plaintiff-respondent.

CONNOR T. HANSEN, J.   Plaintiff and Penelope were residents of Illinois. Although they had never been legally married, the plaintiff and Penelope had been living together as man and wife continuously since 1961, during which time three children were born to them. Plaintiff and Penelope, with their children, lived together in the same home. Penelope used the surname of Henderson during this time rather than her own maiden name.

State Farm is a foreign insurance corporation with home offices in Bloomington, Illinois.[1] The policy was negotiated, issued and delivered in Illinois. At the time of the issuance of the policy, plaintiff and Penelope were residents of Illinois, living in the same household. The annual premiums were paid and the loss claims were filed in Illinois. The insured vehicle was licensed, maintained and garaged in Illinois.

---

[1] State Farm is also authorized to transact the business of insurance in this state, including the business of writing and issuing automobile liability insurance policies.

John E. Howe, at the time of the accident, was a resident of Wisconsin. American Family is a domestic corporation, organized and existing under the laws of Wisconsin. Its home office and principal place of business is located in Madison, Wisconsin. Its business includes the writing and issuing of automobile liability insurance.

In its motion for summary judgment, State Farm alleges the applicability of its "family-exclusion" clause. Included under "Exclusions" to insuring agreements I and II of their policy is the following provision:

"This insurance does not apply under:
". . .
"(i) coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; . . ."

The issue presented on this appeal is whether State Farm is entitled to assert the family-exclusion clause as a defense to liability under its insurance contract with Penelope.

A family-exclusion clause is valid in Illinois [2] but not in Wisconsin.[3] State Farm contends that the trial court erred in applying Wisconsin law, as opposed to Illinois law. Respondents contend that Wisconsin law should apply and, in the alternative, that State Farm's family-exclusion clause is inapplicable under the facts in that plaintiff was not a member of Penelope's "family" within the meaning of the exclusion.

Before a conflicts-of-laws problem is presented, it must appear that the ultimate selection of law will affect the outcome. The choice must be shown to be "outcome determinative." *Hunker v. Royal Indemnity Co.* (1973), 57 Wis. 2d 588, 204 N. W. 2d 897. It is argued that an

---

[2] *Miller v. Madison County Mut. Auto. Ins. Co.* (1964), 46 Ill. App. 2d 413, 197 N. E. 2d 153.

[3] Sec. 204.34 (2), Stats.

application of Wisconsin law would permit plaintiff's and American Family's causes of action against State Farm to proceed. However, whether an application of Illinois law would terminate the proceedings as to State Farm depends upon the applicability of State Farm's exclusionary clause to the instant facts. If plaintiff was a member of Penelope's "family" within the meaning of State Farm's family-exclusion clause, Illinois law would result in the termination of further proceedings against State Farm. Thus, the choice of Wisconsin or Illinois law would be "outcome determinative." If, however, plaintiff was not a member of Penelope's "family," the choice of law and subsequent determination of the family-exclusion clause's validity in the instant proceedings would be meaningless. Therefore, whether a choice need be made between Wisconsin and Illinois law is dependent upon resolution of this issue.[4]

There is no dispute that plaintiff was residing in the same household as the insured, Penelope. The issue on this appeal is the interpretation to be given the word "family" as used in State Farm's policy, and, more particularly, whether or not plaintiff should be considered a "member of the family" of the insured.

The word "family" is of "great flexibility and is capable of many different meanings according to the connection in which it is used." 35 C. J. S., *Family*, p. 936. However, a policy of insurance, like any other

[4] While the resolution of this issue could, in itself, create a conflicts-of-laws problem, this court is not presented with one on this appeal. The parties to this action have cited no Wisconsin or Illinois authority that could be deemed controlling, and there appears to be none. Neither Wisconsin nor Illinois recognize common-law marriages. *See: Estate of Van Schaick* (1949), 256 Wis. 214, 40 N. W. 2d 588; and Smith Hurd, Ill. Annot. Stats., ch. 89, sec. 4, respectively. Therefore, this court may address itself to this issue as one of first impression.

contract, is to be construed so as to give effect to the intention of the parties.[5]

State Farm cites *Hunter v. Southern Farm Bureau Casualty Ins. Co.* (1962), 241 S. C. 446, 129 S. E. 2d 59, to support its contention that the term "family," for the purposes of its family exclusionary clause, was intended to include putative spouses. In *Hunter, supra,* the court held that under an exclusionary provision of an automobile liability insurance policy, which excluded from coverage injury to a member of the family of the insured residing in the insured's household at the time of death, the estate of the deceased was excluded from coverage, where the insured and the intestate, although they had never been married, had been living together as man and wife continuously for six years and had three children born to them. Furthermore, the record revealed that such relationship was adulterous, as the insured had a living wife from whom he was not divorced. Holding that the moral and legal standards violated by the relationship of the insured and the intestate were not involved, the court, in *Hunter, supra,* page 450, stated:

"The words 'family' and 'household' are here used in a clause restricting liability of the insurer in an automobile liability insurance policy. The purpose of the exclusion clause is to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury. *Tomlyanovich v. Tomlyanovich,* 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; *Cartier v. Cartier et al.,* 84 N. H. 526, 153 A. 6. As stated in

---

[5] "The basic guide to the construction of the contract of insurance is the intention of the parties, and contracts of insurance are generally to be construed with the thought that the parties apparently intended there should be effective coverage with respect to a particular kind or kinds of risk, and that it was the purpose of the insured to obtain coverage. . . ." 12 Couch, *Insurance* (2d ed.), p. 107, sec. 45:5.

the *Cartier case*: "The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of his household for accidents insured against increases the hazard of liability under the policy in such cases over that for accidents to others. Without actual dishonesty, the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or nonresistance blame for hurting a member of his household than for doing harms to others.'

"In the light of the clear purposes intended to be accomplished by the exclusion clause in question, we think that the term 'family', as here used, includes 'such persons as habitually reside under one roof and form one domestic circle.' *Johnson v. State Farm Mutual Automobile Ins. Co.*, 8 Cir., 252 F. (2d) 158. If the injured person is a member of such family circle, liability of the insurer is excluded."

On the other hand, respondents cite *Hicks v. Hatem* (1972), 265 Md. 260, 289 Atl. 2d 325, wherein the Court of Appeals of Maryland reached the opposite conclusion. *Hicks, supra,* involved a factual setting almost identical to *Hunter, supra,* and the case at bar. A clause in the automobile liability insurance policy under consideration excluded from coverage *"any member of the family of the insured residing in the same household as the insured."* Interpreting the word "family" the court in *Hicks, supra,* at pages 263, 264, stated:

" 'In the construction of contracts, even more than in the construction of statutes, *words which are used in common, daily, non-technical speech should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage rather than a restrictive meaning which they may have acquired in legal usage. . . .*' " 254 Md. at 472, 473.

*"The Random House Dictionary of the English Language* (Unabridged 1966 ed.) defines 'family' as:

" '1. parents and their children, whether dwelling together or not. 2. the children of one person or one couple collectively. 3. the spouse and children of one

person. 4. any group of persons closely related by blood, as parents, children, uncles, aunts and cousins. 5. all those persons considered as descendants of a common progenitor. . . .'

It is not until we come upon the seventh meaning attributed to the word 'family' that the interpretation urged by the appellee appears:

" '. . . 7. a group of persons who form a household under one head, including parents, children, servants, etc. . . .'

An excerpt from *Webster's Third International Dictionary* (Unabridged 1961 ed.) discloses a similar definition of 'family':

" '. . . 2a: a group of persons of common ancestry. b: a people or group of peoples regarded as deriving from a common stock. 3a: a group of individuals living under one roof. b: the body of persons who live in one house and under one head including parents, children, servants and lodgers or boarders. . . .'

It would thus appear that in common parlance and usage the word 'family' more frequently connotes the existence of a marital or blood relationship, or a legal status approximating such a relationship."

Rejecting the reasoning of *Hunter, supra,* the court, in *Hicks, supra,* at pages 265, 266, stated:

"Although this Court has upheld the validity of the 'household exclusion' clause and stated its purpose to be '. . . to protect the insurer against collusive or cozy claims, [and] to exempt him from liability stemming from one whose natural ties and pulls are likely to favor a claimant who lives in the same household, . . .' we are not prepared to expand the breadth of the clause by a liberal interpretation of its terms. . . .

" '. . .

"Moreover, a limited construction of the word 'family' is supported in this instance by the use of the word 'household' in the same phrase. If the intention of the Company was to exclude from coverage all of those persons who might fall within the broad definition of the term 'family,' which is urged upon this Court by the

appellee, it could have done so by merely excluding the members of the insured's household. However, the use of both of the words 'family' and 'household' in the exclusionary clause leads us to believe that they were not intended to be used in a synonymous fashion.

"Finally, regarding the interpretation given to the word 'family' by the Court in *Hunter, supra,* it should be borne in mind that while the State of South Carolina recognizes the concept of 'common law marriage,' Maryland does not. *Henderson v. Henderson,* 199 Md. 449, 454, 87 A. 2d 403 (1952). Therefore, in this State, it cannot be said that the appellant possesses a legal status which is the equivalent of being a family member."

We are of the opinion that the better interpretation of the family-exclusion clause is represented by the determination of the Maryland Court of Appeals.

Words used in contracts of insurance, like any other contract, must be given the meaning they ordinarily convey to popular mind. 12 Couch, *Insurance* (2d ed.), p. 113, sec. 45:12, states:

". . . in construing a policy of automobile liability insurance the meaning which will be enforced is the meaning of the words employed as interpreted in the light of the common understanding of men."

A family-exclusion clause is to be given a similar construction.[6] The term "family," as applied to policies like the present, has been held, generally, to include a relationship by blood or marriage.[7]

If we were to construe the word "family" as urged by State Farm, it would result in giving controlling

---

[6] 12 Couch, *Insurance* (2d ed.), p. 490, sec. 45:511; *Tomlyanovich v. Tomlyanovich* (1953), 239 Minn. 250, 58 N. W. 2d 855, 857.

[7] *Tomlyanovich, supra; Brown v. Shield Fire Ins. Co.* (Mo. Ct. of App. 1953), 260 S. W. 2d 337, 338; *Dressler v. State Farm Mut. Automobile Ins. Co.* (1963), 52 Tenn. App. 514, 376 S. W. 2d 700, 702; *Collins v. Northwest Casualty Co.* (1935), 180 Wash. 347, 39 Pac. 2d 986, 989; *State Farm Mut. Automobile Ins. Co. v. Oliver* (6th Cir. 1969), 406 Fed. 2d 409, 410.

weight to the purpose State Farm now claims it had in mind when it wrote the contract of insurance and thus ignore the ordinary meaning of the words it chose to express that purpose. This would be applying in reverse the rule that an insurance policy must be construed in accordance with the principle that the test is not what the insurer intended its words to mean but what a reasonable person would understand them to mean.[8] Moreover, this court has held that whatever ambiguity exists in a policy of liability insurance must be resolved in favor of the insured.[9] Judge HAND, in *Gaunt v. John Hancock Mut. Life Ins. Co.* (2d Cir. 1947), 160 Fed. 2d 599, 602, certiorari denied 331 U. S. 849, 67 Sup. Ct. 1736, 91 L. Ed. 1858, stated the rule in the following manner:

". . . insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion. . . ."

We conclude that the term "family," as used in State Farm's family-exclusion provision, must be read to exclude the plaintiff. Plaintiff is not a member of Penelope's "family" and State Farm's family-exclusion clause is inapplicable to the instant facts. Thus, no conflict-of-laws issue is presented. The order denying the motion of State Farm for summary judgment is affirmed.

*By the Court.*—Order affirmed.

---

[8] *McPhee v. American Motorists Ins. Co.* (1973), 57 Wis. 2d 669, 205 N. W. 2d 152; *Luckett v. Cowser* (1968), 39 Wis. 2d 224, 159 N. W. 2d 94.

[9] *McPhee, supra; Neumann v. Wisconsin Natural Gas Co.* (1965), 27 Wis. 2d 410, 134 N. W. 2d 474.